UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JON BOLES, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 3:19-CV-02367-X |
| | § | |
| NAVARRO COLLEGE, | § | |
| | § | |
| *Defendant.* | § | |

**MEMORANDUM OPINION AND ORDER**

Jon Boles sued Navarro College, his former employer, under several causes of action stemming from the College's handling of a purported Title IX complaint against him and the school's decision to non-renew his teaching contract. The College moved to dismiss most of the complaint for failure to state a claim. [Doc. No. 28]. The Court held a hearing on October 8, 2020. For the reasons explained below, the Court **DENIES IN PART** and **GRANTS IN PART** the motion to dismiss.

**I. Factual Background**

Jones Boles was a professor of art at Navarro College. Navarro College has no tenured professors and instead retains its teaching faculty via three-year contracts, renewable at the school's discretion. Each contract includes a term acknowledging that no renewals are guaranteed and no employment interest exists beyond the current contract term.

Tensions began when the College hired Jennifer Jones to join the art professor faculty. The College allegedly treated Jones preferentially and gave her benefits that

1

were not available to Boles, such as nude model privileges, lower office hours requirements, and more flexible in-person teaching standards. Conflict frequently sparked between Boles and Jones. Incidents ranged from complaining about each other's performance and class styles to Jones allegedly locking Boles out of an art studio and lobbying individual students to take her classes over his. Jones levied several complaints about Boles to the administration, and for a period of time the College even prohibited from communicating with each other.

After a few years of conflict, Jones filed a Title IX complaint against Boles, alleging sexual harassment. The College placed Boles on administrative leave and ordered no contact with Jones, although he was not informed about the Title IX complaint until the investigators contacted him a few weeks later. Boles alleges he encountered a plethora of unequal treatments and breaches of school policy throughout the investigative process. Before this investigation concluded, Boles's contract term ended and the College elected to not renew him for another term. The College based this decision on another investigation, independent from the Title IX matter, which concluded Bole's behavior and teaching were "antithetical to the expectations at Navarro College."[1] According to Boles, the College's administrative policies entitle a non-renewed employee to a peer hearing to challenge the decision. Boles alleges that he requested, but never received, this hearing. The Title IX investigation wrapped up a couple months later and found no violations of Title IX nor evidence to support Jones's harassment allegations.

---

[1] Doc. No. 25 at 24.

Boles now sues Navarro College under several causes of action: (1) breach of contract; (2) discrimination and hostile work environment under Title VII and the Texas Labor Code; (3) violations of 14th Amendment procedural and substantive due process under section 1983; (4) violations of the Texas Constitution's due process and equal protection clauses; (5) discrimination and retaliation under Title IX; and (6) declaratory relief under the Federal Declaratory Judgment Act. Navarro College moved to dismiss the declaratory judgment, section 1983, Texas Constitution, and Title IX claims as well as parts of the Title VII and Texas Labor Code claims.

## II. Legal Background

Under Rule 12(b)(6), the Court evaluates the pleadings by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff."[2] To survive a motion to dismiss, Boles must allege enough facts "to state a claim to relief that is plausible on its face."[3] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[4] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[5] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

---

[2] *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2020).

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Id.*; *see also Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

3

has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[6]

### III. Application

As an initial matter, Boles conceded at the hearing that his Federal Declaratory Judgment Act claims lacked a jurisdictional basis.[7] Accordingly, the Court grants the motion to dismiss as to the declaratory judgment claims. Further, Boles confirmed in his response brief that his claims under Title VII and the Texas Labor Code challenge the time when the College put him on paid administrative leave, and any earlier alleged unlawful acts are included in the complaint as mere background information. The Court then denies the motion to dismiss as to the Title VII and Texas Labor Code causes of action.

The remaining challenged claims are under Title IX, section 1983, and the Texas Constitution. The Court takes these claims in turn.

#### A. Title IX

Title IX establishes that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[8] Although the text of Title IX provides no private cause of action, the Supreme Court implied a private right of action to enforce the statute's prohibition on intentional sex discrimination.[9] The Supreme Court later extended this right of

---

[6] *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. Rule 8(a)(2)).

[7] Doc. No. 49 at 45: 11–17.

[8] Title IX, 20 U.S.C. § 1681(a).

[9] *Cannon v. Univ. of Chicago*, 441 U.S. 677, 690–93 (1979).

action to encompass anyone who reports or complains of Title IX discrimination and experiences retaliation from the federal funds recipient.[10]

While Title IX governs access to education, Title VII provides the exclusive remedy for discrimination in employment matters.[11] When it comes to retaliation, however, the key question is which type of type of discrimination complaint sparked the backlash.[12] If the employee complained about employment discrimination, the right of action is exclusively in Title VII, but Title IX protects employees who raise complaints or participate in investigations concerning compliance with the substantive provisions of Title IX.[13] One district court has applied Title IX to also protect persons charged with sexual harassment under Title IX from retaliation as a result of them being the subject of the complaint or electing to participate in the proceedings.[14]

The College argues that Boles has no cognizable claim under Title IX because, by alleging sexual harassment from a co-worker, Jones's complaint was actually an allegation of Title VII discrimination in employment rather than discrimination in education under Title IX. Thus, under *Lakoski*, his claim is preempted by Title VII. It might be true that Jones's complaint is substantively a Title VII complaint, and that distinction identified by *Lakoski* and *Lowrey* would be important if, like in those

---

[10] *Jackson v. Birmingham* 544 U.S. 167, 174 (2005). The Court even saw fit to supplement its implied rights with a private damages remedy to boot. *See id.* at 181–83. *See generally Franklin v. Gwinnett Cty. Pub. Schs.*, 503 U.S. 60 (1992).

[11] *Lakoski v. James*, 66 F.3d 751, 754 (5th Cir. 1995).

[12] *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 249 (5th Cir. 1997).

[13] *Id.* at 249–50.

[14] *Wilkerson v. Univ. of N. Texas*, 223 F. Supp. 3d 592, 602–03 (E.D. Tex. 2016).

cases, the retaliation was aimed at an individual making the complaint.[15]  Boles, however, is not claiming retaliation for complaining about discrimination but rather for being the subject of complaint.[16]

The Supreme Court has stated that the term "discrimination" in Title IX is a term that "covers a wide range of intentional unequal treatment," and "by using such a broad term, Congress gave the statute a broad reach."[17]  In light of this broad reach, our sister court in the Eastern District of Texas determined that a broad reading of Title IX also protects the subject of a sexual harassment claim from retaliation, noting that "[a]nything less would place too great a weight on false accusations by stripping the subject of the investigation of all protections from the very institution that is supposed to be an impartial tribunal."[18]  This may very well be in line with Supreme Court's intent in implying a retaliation cause of action from Title IX.  But there is no clear guidance from the Fifth Circuit or Supreme Court determining whether the subject of a Title IX complaint is protected by Title IX from retaliation or, if so, how to apply miscellaneous matters like damages, elements, burdens of proof, etc.[19]  Absent clear instruction from Congress or the higher courts, the Court will not extend Title IX here to include the relief Boles seeks.

Boles also asserts a Title IX claim of discrimination, arguing that the College

---

[15] *See Lowrey*, 117 F.3d at 244–45; *Lakoski*, 66 F.3d at 752–53.

[16] *See Wilkerson*, 223 F. Supp. 3d at 599–600.

[17] *Jackson*, 544 U.S. at 175.

[18] *Wilkerson*, 223 F. Supp. 3d at 602–03.

[19] Neither is there authority to suggest that Title VII protects someone accused of employment discrimination from retaliation based on being the subject of the accusation.

6

withheld procedural rights usually offered to participants in a Title IX investigation on the basis of his sex.  Essentially, Boles argues that, because the College conducted a Title IX investigation in a discriminatory manner, he can sue for discrimination under the substantive provisions of Title IX.  But Boles provides no authority that suggests an investigation participant may challenge the process of the investigation itself under Title IX.  The Court will not create one here.  Without a claim for relief stemming from Title IX, this is simply an employee alleging his employer discriminated against him on the basis of sex.  And under *Lakoski*, the remedy for employment discrimination is found exclusively in Title VII.[20]  The Court grants the motion to dismiss on the Title IX discrimination claim.

## B. Section 1983

1. Procedural Due Process

Boles alleges that the College violated his 14th Amendment rights to procedural due process, substantive due process, and equal protection when it decided to non-renew his contract without affording him a hearing.  A procedural due process claim requires the plaintiff to "identify a protected life, liberty, or property interest and prove that governmental action resulted in a deprivation of that interest."[21]  A protected property interest exists where "a legitimate claim of entitlement" is created and defined by "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and

---

[20] *Lakoski*, 66 F.3d at 754.

[21] *Wilkerson v. Univ. of N. Texas*, 878 F.3d 147, 155 (5th. Cir. 2017) (quotation omitted).

that support claims of entitlement to those benefits."[22] Although "[a] teacher . . . who has held his position for a number of years, might be able to show from the circumstances of this service—and from other relevant facts—that he has a legitimate claim of entitlement to job tenure,"[23] state law may nonetheless bar a due process claim.[24]

Here, Boles has no protected property interest in his employment. Boles argues that although not tenured, his thirteen years of employment at Navarro College, which included several contract renewals, gave him the understanding that his employment would continue so long as he continued to meet expectations. This is certainly a feeling of a property interest. But as the band *Boston* once sang, it takes "More than a Feeling."[25] Here, the Boles's contract and state law side with *Boston* over Boles. Boles's contract expressly forecloses any property interest in future employment beyond the contract term.[26] And Texas law disavows expectations of future employment for faculty members who do not hold tenure.[27] Despite his subjective belief, Boles had no legally cognizable claim of entitlement to future employment at Navarro College, and therefore no property interest protected by the

---

[22] *Bd. of Regents of St. Colls. v. Routh*, 408 U.S. 564, 577 (1972).

[23] *Perry v. Sinderman*, 408 U.S. 593, 602 (1972).

[24] *See id.* at 602 n.7 ("We do not now hold that the respondent has any such legitimate claim of entitlement to job tenure. . . . If it is the law of Texas that a teacher in the respondent's position has no contractual or other claim to job tenure, the respondent's claim would be defeated.").

[25] *Boston, More than a Feeling* (Epic 1976).

[26] Doc. No. 30 at 17 ("I further understand and agree that Navarro College has not adopted any policy, rule, regulation, law or practice providing for tenure. No right of tenure is created by this contract. No property interest, expressed or implied, is created in continued employment beyond the contract term.").

[27] *See* TEX. EDUC. CODE § 51.943(g); *Wilkerson*, 878 F.3d at 155–56.

8

due process clause.

Boles also argues that he has a protected property interest in the College's adherence to it policies and procedures. Boles claims the College's policies gave him the right to obtain a peer hearing to challenge the reasons for his non-renewal, and that the College deprived this interest when they failed to give him this requested hearing. But Boles does not provide any authority establishing a protected property interest in contractually created post-decision review procedures when the employee already has no property interest in future employment. Absent clear instruction from the Fifth Circuit, the Court will not create that interest here. Accordingly, the Court dismisses with prejudice Boles's section 1983 claim for procedural due process violations.

2. Substantive Due Process

Boles also argues he was entitled to a hearing under substantive due process. The Fifth Circuit has held that "[a] constitutionally protected liberty interest is implicated only if an employee is discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities."[28] In that situation, a public employee has a limited constitutional right to a hearing to clear his name.[29] In the Fifth Circuit, the elements of a liberty interest claim are: (1) the employee was discharged; (2) stigmatizing charges were made against him in connection with his discharge;

---

[28] *White v. Thomas*, 660 F.2d 680, 684 (5th Cir. 1981) (citing *Codd v. Velger*, 429 U.S. 624, 628 (1977); *Paul v. Davis*, 424 U.S. 693, 706 (1976)).

[29] *Routh*, 408 U.S. at 573.

(3) the charges were false; (4) he was not provided notice or an opportunity to be heard prior to his discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer refused his request for a hearing.[30]

The College argues that Boles failed to establish the fifth element, that the charges were made public. The publicization occurs "where the governmental agency has made or is likely to make the allegedly stigmatizing charges public in any official or intentional manner, other than in connection with the defense of (related legal) action."[31] In his complaint, Boles alleges that the College's faculty, students, and his friends all knew about the Title IX allegations.[32] These are insufficient facts. Instead, Boles must allege facts that plausibly demonstrate that the College made his Title IX charges public through some official or intentional manner. Accordingly, the Court dismisses without prejudice Boles's section 1983 claim for substantive due process violations and will give him a final opportunity to replead this claim.

3. *Monell* Liability

As a local government entity, Navarro College can only be liable under section 1983 where the "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."[33] An "official policy" is:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by

---

[30] *Bledsoe v. City of Horn Lake, Miss.*, 449 F.3d 650, 653 (5th Cir. 2006).

[31] *Ortwein v. Mackey*, 511 F.2d 696, 699 (5th Cir. 1975) (quotation omitted).

[32] Doc. No. 25 at 27.

[33] *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978).

> an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.[34]

When relying on prior unconstitutional incidents to show a widespread practice, the incidents "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees."[35]

Here, Boles argues that the College's board of directors delegated policy-making authority over employment matters to the college president, and the president adopted an official policy of discriminating against male employees, demonstrated by the discrimination Boles faced.[36] Alternately, Boles argues that the College has a "widespread practice" of discrimination, which included years of treating Boles discriminatorily and discriminating against "other similarly situated male faculty members."[37]

This is not sufficient to establish entity liability under *Monell*. Even if the college president does possess delegated policy-making authority, which is yet to be determined, simply alleging unconstitutional action by that policymaker does not

---

[34] *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam).

[35] *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009).

[36] Doc. No. 39 at 25.

[37] Doc. No. 39 at 26–27.

identify an official policy. An express official policy is "officially adopted and promulgated" by a policymaker; some published rule or guidance that arguably directed or resulted in the alleged violation.[38]

Alternatively, an official policy can be established implicitly, via a widespread practice or custom of constitutional violations that give actual or constructive knowledge to the entity's governing body.[39] However, conclusory pleadings of a series of alleged *past* constitutional harms against the plaintiff does not form the basis for establishing a custom that could impute liability for the *current* alleged violation. Similarly, vague assertions of the College treating "other similarly situated male faculty members" unconstitutionally is not sufficient to state a plausible claim.[40] Facts like names, dates, specific acts, and official determinations that conduct was unconstitutional are needed to raise the right to relief above a speculative level.

When repleading his section 1983 claim, Boles should address this *Monell* deficiency in addition to curing the defects in his substantive due process allegations.

## C. Texas Constitution

Boles also asserts procedural and substantive due process claims under the due course of law clause in the Texas Constitution. The Texas due course of law clause is legally identical to the 14th Amendment due process clause, and the two are analyzed under the federal standard.[41] Boles's pleadings under the Texas

---

[38] *Bennett*, 735 F.2d at 862.

[39] *Id.*

[40] *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 545.

[41] *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995) ("While the Texas Constitution is textually different in that it refers to 'due course' rather than 'due process,' we regard

Constitution then suffer the same defects as his 14th Amendment claims. Accordingly, the Court grants the motion to dismiss on these claims and dismisses with prejudice the procedural due process claim and dismisses without prejudice the substantive due process claim.

### IV. Conclusion

For the reasons outlined above the Court **DENIES IN PART** and **GRANTS IN PART** the motion to dismiss. The Court **DENIES** the motion with respect to the Title VII and Texas Labor Code employment discrimination claims. The Court **GRANTS** the motion and dismisses with prejudice the Federal Declaratory Judgment Act claim, Title IX claims, and the section 1983 and Texas Constitution claims based on procedural due process. The Court **GRANTS** the motion and dismisses without prejudice the section 1983 and Texas Constitution claims based on substantive due process and *Monell* liability. Boles may file an amended complaint that omits the claims that the Court dismissed with prejudice and repleads the *Monell* liability and substantive due process claims in accordance with this order within 28 days.

**IT IS SO ORDERED** this 26th day of October 2020.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

these terms as without meaningful distinction. As a result, in matters of procedural due process, we have traditionally followed contemporary federal due process interpretations of procedural due process issues.").