UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JON BOLES, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 3:19-cv-2367-X |
| | § | |
| NAVARRO COLLEGE, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Jon Boles worked as an art professor at Navarro College ("Navarro") for about fourteen years.  In 2018, after a scandalous—but contrived—claim from a colleague that Boles sexually harassed professors and students, Navarro declined to renew Boles's contract, citing a separate student complaint.  Boles sued.  Navarro now moves for summary judgment on all of Boles's claims. [Doc. No. 78].  Navarro also moves to strike Boles's summary-judgment evidence.  [Doc. No. 97].  The Court **GRANTS IN PART AND DENIES IN PART** Navarro's motion for summary judgment and **DISMISSES IN PART AS MOOT AND DENIES IN PART** its motion to strike.  Because Boles nonsuits his breach-of-contract claim against Navarro, the Court **DISMISSES WITHOUT PREJUDICE** that claim.

### I.  Factual Background

After Boles had worked at Navarro for a decade without incident, in 2014, Navarro hired another art professor, Jennifer Jones.  Jones and Boles rankled one

another, and, after three years of mutual nettling, in 2017, Jones began repeatedly requesting that Navarro fire Boles.

### a. Jones's Complaints

Jones's first complaint stemmed from the actions of Linda Timmerman, Navarro's Dean of Fine Arts and Humanities. Given the spat between Boles and Jones, Timmerman's superiors had repeatedly instructed her not to copy Jones on emails to Boles, because Boles "perceives it as them ganging up on him."[1] Regardless, in April of 2017, Timmerman e-mailed Boles—with Jones copied—demanding that he promptly finish a project. Boles provided an impassioned reply, lambasting Jones's handling of previous projects and decrying her dishonesty. He waited about fifteen hours—until after midnight—to send that email and closed it by saying "I'm gonna wait until the midnight hour."[2] Timmerman's superiors concluded that Jones "manipulated" Timmerman into sending an email that "pushed all of [Boles's] buttons."[3]

Jones filed a complaint with Navarro, claiming that Boles's reply was "vicious and unprovoked" and that she "d[id] not feel safe around [Boles]."[4] She also added a claim that Boles engaged in "intimidating conduct," such as "standing so close to me that as a woman, I felt physically threatened."[5] Although Timmerman sent Boles a

---

[1] Doc. No. 81-1 at 155.

[2] *Id.* at 156.

[3] *Id.* at 155–57.

[4] *Id.* at 309–11.

[5] *Id.* at 311.

disciplinary warning, that did not placate Jones.  Jones appealed that decision, repeatedly requesting that Navarro "replace[]" Boles.[6]  Navarro rejected those requests.

Jones then tried her hand with a sexual-harassment claim.  On September 15, 2017, Jones filed a Title IX complaint again requesting Boles's termination, or, alternatively, professional separation from Boles.  In addition to her own sexual-harassment allegations, Jones accused Boles of being "inappropriate with women students," claiming that a student had confided in her that Boles "like[s] the little girls" and "invites them to his home."[7]  Those claims turned out to be false.  But, in the meantime, Navarro initiated an investigation into Jones's Title IX complaint.

### b.  The Student Complaint

About two weeks after Jones filed her Title IX complaint, on October 2, 2017, a student complained to Timmerman that Boles had not yet graded some of her completed assignments.  The student also related that she often draws portraits of Asian females but, on one occasion, opted to draw a Caucasian woman.  In response, Boles noted during class that she was "drawing a white woman."[8]  Timmerman discussed this conduct with Boles and attended one of Boles's classes.

Apparently, Boles assuaged Timmerman's concerns.  On October 4, 2017, the student again talked to Timmerman, saying that Boles had adjusted the class

---

[6] *Id.* at 317.

[7] Doc. No. 81-2 at 181.

[8] Doc. No. 82 at 153.  Boles taught art classes, so, unsurprisingly, he and his students sometimes commented on visual aspects of his students' work.  *See, e.g.*, Doc. No. 91 at 543 (memorializing a student's request to draw Dionysus in a "purple, almost wine- colour[]").

structure to her satisfaction, provided her grades, and provided her feedback. Consequently, Timmerman felt "much better about the class."[9]   Nevertheless, Navarro initiated an investigation into the student complaint.

### c.   Boles's Administrative Leave and Non-Renewal

Navarro placed Boles on indefinite administrative leave on October 6, 2017. By November 1, 2017, Navarro had completed its investigation of the student complaint.  But it left Boles in limbo for four more months—all the while Navarro's investigation into Jones's Title IX claim remained ongoing.  On March 5, 2018, Navarro decided not to renew Boles's teaching contract.

Two months later, on May 7, 2018, the investigation into Jones's Title IX claim concluded that Jones's allegations "are not credible," that she engaged in "revisionist history" and "purposeful distortion," and that Jones herself was often "the aggressor and Mr. Boles was in fact defending himself from someone who . . . wanted control."[10]

After properly bringing an EEOC charge, Boles sued Navarro, bringing claims for gender discrimination, retaliation, hostile work environment, and breach of contract.  Navarro now moves for summary judgment on each of those claims.

## II.  Legal Standard

District courts can grant summary judgment only if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[11]

---

[9] Doc. No. 82 at 155.

[10] Doc. No. 81-1 at 90.

[11] FED. R. CIV. PROC. 56(a).

### III. Analysis

### a.   Gender-Discrimination Claims

To prove gender discrimination, Boles must show that he (1) "is a member of a protected group," (2) "was qualified for the position," (3) "suffered some adverse employment action," and (4) "was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group."[12]   Navarro raises three challenges.

First, Navarro contends that Boles cannot show element (3) because "Boles's placement on administrative leave" doesn't constitute an "adverse employment action."[13]   But, as Boles points out, Navarro "does not contest that [Boles'] non-renewal constitutes an adverse employment action."[14]   Thus, the Court finds a genuine dispute of material fact concerning whether Boles suffered an adverse employment action.

Second, Navarro contends that Boles cannot prove element (4) because there is no evidence Navarro replaced Boles with someone outside his protected group or "that [Boles] was treated differently from similarly-situated employees."[15]   But Boles cites evidence that Jones—a female art professor—replaced Boles in teaching some

---

[12] *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam).  Although Boles also sues under Texas law, the parties provide the same analysis for all gender-discrimination claims.

[13] Doc. No. 79 at 27; *see McCoy*, 492 F.3d at 559 (recognizing that "placing [a plaintiff] on paid leave . . . [is] not an adverse employment action" for purposes of gender-discrimination claims).  Similarly, Navarro contends that Boles's administrative leave began more than 180 days before Boles brought his EEOC charge, which could pose a problem for his Texas law claim.  *See* Tex. Labor Code § 21.202(a) ("[A] complaint under this subchapter must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred.").

[14] Doc. No. 89 at 35.

[15] Doc. No. 79 at 28.

of his classes.[16]   Boles also cites evidence that Navarro treated Jones more favorably.[17]   The Court finds a genuine dispute of material fact on the question of whether Boles was "replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group."[18]

Third, assuming that Boles can make a prima-facie showing, the burden shifts to Navarro to articulate a "nondiscriminatory . . . reason" for non-renewing Boles.[19] Boles then has the burden of showing that that rationale is pretextual.[20]   Navarro contends that it did not renew Boles due to his "unsatisfactory job performance" and a "racially-tinged statement,"[21] and that "Boles has no evidence" that that rationale is "pretext[ual]."[22]   But Boles presents some evidence suggesting that Navarro's rationale is pretextual.[23]   The Court finds a genuine dispute of material fact on the question of whether Navarro's rationale is pretextual.

The Court **DENIES** Navarro's motion for summary judgment as to Boles's gender-discrimination claims.

---

[16] Doc. No. 91 at 459 ("Ms. Jones volunteered to teach my mini-mester over the Christmas Holiday, which I had taught for years. I learned she had taken over this course when she forwarded me an email about it . . . .").

[17] *See, e.g.*, Doc. No. 81-2 at 279–81 (reflecting low enrollment for Jones's Spring 2017 courses compared to Boles's Spring 2017 courses when Navarro placed only Boles on a performance improvement plan allegedly due to low enrollment).

[18] *McCoy*, 492 F.3d at 556.

[19] *Id.* at 557.

[20] *Id.*

[21] Doc. No. 79 at 33–34.

[22] *Id.* at 35.

[23] *See, e.g.*, Doc. No. 81 at 164 (showing that Navarro finished investigating the student complaint by October 30, 2017, long before the decision not to renew Boles was made).

### b.   Retaliation Claims

To prove retaliation, "[Boles] must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action."[24]   Navarro challenges elements (1) and (3).   Although Boles provides six activities for which he claims Navarro retaliated against him, each activity is (1) not protected by Title VII, (2) nonexistent, or (3) lacking a causal connection to any adverse employment action.

### 1.   Unprotected Activities

Boles claims Navarro retaliated against him because his counsel sent two letters to Navarro regarding its internal investigation into Jones's Title IX claim.[25] For those letters to support a retaliation claim, Boles must have "reasonably believed" that they constituted a protected activity.[26]   "[P]rotected activities include . . . opposing . . . an unlawful employment practice."[27]   And the requisite employment practice "must have something to do with Title VII in order to support a retaliation claim."[28]

But both letters discuss Boles's due-process rights—not employment practices. For instance, the first letter demands "that the College comport[] with . . . due

---

[24] *McCoy*, 492 F.3d at 556–57.

[25] Doc. No. 81-2 at 240–43, 250–52.

[26] *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1210 (5th Cir. 2021) (per curiam) (emphasis omitted).

[27] *Armstrong v. K & B La. Corp.*, 488 F. App'x 779, 781 (5th Cir. 2012) (per curiam).

[28] *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 242 (5th Cir. 2016).

process."[29]  The second deals with interview scheduling and document access.  Thus, as Navarro notes, those letters contain no "references [to] discrimination, harassment, or any other prohibited employment practice."[30]

Boles also appears to contend that Navarro retaliated against him because he participated in its internal investigation.  Although "participating . . . in an investigation . . . under Title VII" can constitute a protected activity,[31] "participation in an internal employer investigation *not connected with a formal EEOC proceeding* does not qualify."[32]  Because Navarro's investigation into Jones's Title IX complaint wasn't connected with a formal EEOC proceeding, Boles's participation in Navarro's internal investigation isn't protected under Title VII.[33]

## 2.   Nonexistent Activities

Boles also claims Navarro retaliated against him for reporting Jones's harassment to Timmerman "only . . . days" before Navarro placed him on leave.[34]  But there's no evidence Boles made such a report.  Although Boles and Timmerman had two interactions in early October 2017, neither Timmerman's nor Boles's account of

---

[29] Doc. No. 81-2 at 242.

[30] Doc. No. 99 at 30.

[31] *Armstrong*, 488 F. App'x at 781.

[32] *Rite Way Serv.*, 819 F.3d at 240 n.2 (cleaned up) (emphasis added).  Although this Court has acknowledged the EEOC's position that "an employer's internal . . . investigation process . . . is covered under . . . the participation clause," the EEOC cannot trump the Fifth Circuit.  *Kurney v. Gateway Hosp. Grp., Inc.*, No. 3:17-CV-0607-B, 2018 WL 704732, at *2 (N.D. Tex. Feb. 5, 2018) (Boyle, J.).

[33] Boles's reliance on *Scott*, 16 F.4th 1204, is misplaced, because *Scott* expressly declined to consider whether "Scott failed to state a claim under the 'participation clause.'"  *Id.* at 1213 n.3.

[34] Doc. No. 90 at 49.

those interactions documents any such complaint.[35]  Thus, as Navarro notes, "[t]here is no evidence that when Boles met with Dr. Timmerman . . . he reported any purported gender-based discrimination or harassment."[36]

### 3.    Activities Sans Causal Connection

Boles claims Navarro retaliated against him for reporting Jones's hostility and complaining about his performance improvement plan from January to April of 2017.[37]  Assuming, for argument's sake, those are protected activities, Boles must show a causal connection between those activities and an adverse employment action. A plaintiff can prove causation by showing (1) close temporal proximity—like a gap of "up to four months"—between the protected activity and the adverse employment action,[38] or (2) that the adverse employment action "was based in part on knowledge of the [] protected activity."[39]

Boles cites both standards but applies neither.  And for good reason.  Boles's complaints occurred from January to April of 2017—over five months before Navarro placed Boles on administrative leave.[40]  And Boles provides no evidence President Sanchez, who ultimately placed Boles on leave, knew about Boles's January through

---

[35] Doc. No. 82 at 153–55; Doc. No. 91 at 456–57.  To the extent Boles failed to point to the right conversation, this Court need not "sift through the record in search of evidence to support a party's opposition to summary judgment."  *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (cleaned up).

[36] Doc. No. 99 at 30.

[37] *See* Doc. No. 81-1 at 155–57, 299; Doc. No. 91 at 454.

[38] *Evans v. City of Hous.*, 246 F.3d 344, 354 (5th Cir. 2001) (cleaned up).

[39] *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998).

[40] Administrative leave can constitute an adverse employment action for purposes of retaliation claims.  *See McCoy*, 492 F.3d at 559.

April complaints.[41]   Although Boles e-mailed Sanchez to disparage Jones's "job performance," that e-mail didn't mention hostility.[42]   So Boles fails to show causation.[43]

Boles also appears to assert that his EEOC action is protected for retaliation purposes.  That may be so, but an EEOC action Boles commenced ***after*** his non-renewal cannot support his retaliation claim.[44]   Boles tries to resuscitate that argument by claiming that Navarro's adverse employment action against him didn't actually occur until February 27, 2019, when his appeal of his non-renewal "was . . . final."[45]  But Boles cites no precedent supporting that novel proposition.  Accordingly,

---

[41] *See Sherrod*, 132 F.3d at 1122 (recognizing that a plaintiff can show causation with evidence that the "ultimate decision maker" had knowledge of the protected activity or "merely 'rubber stamped' a recommendation to terminate made by an employee with knowledge").  Although Boles briefly contends that "President Sanchez . . . acted as nothing more than a rubber stamp," he appears to make that cat's-paw argument only in support of his gender-discrimination claim—not his retaliation claim.  Doc. No. 90 at 46.  Regardless, his cat's-paw argument wouldn't show causation regarding his early 2017 complaints.  A plaintiff can avail himself of the "cat's paw theory of liability" if he can show that "a person with a retaliatory motive used the decisionmaker to bring about the intended retaliatory action."  *Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752, 758 (5th Cir. 2017) (cleaned up).  In a word, cat's-paw liability effectively imputes a subordinate's discriminatory animus to a decisionmaker.  Boles's cat's-paw argument attempts to impute "***Jones['s] animus***" to Sanchez.  Doc. No. 90 at 46–47 (emphasis added).  But Boles doesn't contend that Jones harbored retaliatory animosity *vis-à-vis* Boles's early 2017 complaints.  Accordingly, Boles's cat's-paw argument cannot demonstrate a causal connection between Boles's early 2017 complaints and Navarro's adverse employment actions against him.

[42] Doc. No. 81-1 at 40–41.

[43] Boles seems to claim that the performance improvement plan constitutes an adverse employment action.  *See* Doc. No. 90 at 49.  But "a performance improvement plan is not an adverse employment action."  *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019).

[44] *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000) (recognizing that "the 'participation clause' is irrelevant" where the plaintiff "did not file a charge with the EEOC until *after* the alleged retaliatory discharge took place").

[45] Doc. No. 90 at 50.

10

the Court cannot conclude that Boles's exhaustion of his appellate remedies somehow delays Navarro's adverse employment action against him.[46]

The Court **GRANTS** Navarro's motion for summary judgment as to Boles's retaliation claim.

### c.   Hostile-Work-Environment Claims

To make out a hostile-work-environment claim, Boles must show that "(1) [he] belongs to a protected group; (2) [he] was subjected to unwelcomed harassment; (3) the harassment complained of was based on [sex]; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment . . . and failed to take prompt remedial action."[47]  Navarro raises three arguments.

First, Navarro challenges element (3), contending "there is no evidence that any action Jones took . . . occurred because of Boles's sex."[48]  To determine whether harassment is "based on sex," courts consider "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."[49]  Boles provides evidence that Jones harassed him for several years—with no evidence that she also harassed women—and that Navarro employees contributed to that harassment by addressing Jones's complaints but not

---

[46] *Del. State Coll. v. Ricks*, 449 U.S. 250, 261 (1980) (recognizing that a "grievance procedure . . . is a ***remedy*** for a ***prior decision***" (emphases added)).

[47] *Mendoza v. Helicopter*, 548 F. App'x 127, 128–29 (5th Cir. 2013) (per curiam) (cleaned up).

[48] Doc. No. 79 at 54.

[49] *Reine v. Honeywell Intern. Inc.*, 362 F. App'x 395, 397 (5th Cir. 2010) (per curiam) (cleaned up).

Boles's complaints.[50]  The Court finds a genuine dispute of material fact on whether Jones created a hostile work environment based on sex.

Second, Navarro challenges element (5), asserting that it was not "aware that Jones allegedly harassed [Boles] on the basis of sex."[51]  But the test is not whether Navarro knew the *basis* for any harassment, but instead whether it "knew" the *existence* "of the harassment in question."[52]  And here, Boles presents evidence that Navarro was aware of Jones's harassment.[53]

Third, Navarro asserts that it "responded to Boles's complaints" and that, accordingly, "Boles cannot establish [Navarro] failed to take prompt remedial action regarding his disputes with Jones."[54]  But Boles provides evidence that, on some occasions, Navarro did not respond to his complaints of a hostile work environment.[55]

Fourth, Navarro contends Boles cannot show supervisory harassment because Jones was not Boles's supervisor.  Here's why that could be important: A supervisor is someone "empowered . . . to take tangible employment actions against the victim."[56]

---

[50] *See, e.g.*, Doc. No. 81-1 at 155–57 (recognizing that Jones "manipulated" Timmerman into rankling Boles); Doc. No. 91 at 453 ("Dr. Hanes refused to listen to the recordings, or the arguments supporting my complaint.").  To the extent Navarro asserts in its motion to strike that Hanes's refusal to listen constitutes inadmissible hearsay, the Court **DENIES** Navarro's motion to strike on that point because any statement is offered for the non-hearsay purpose of establishing Hanes's state of mind.

[51] Doc. No. 79 at 55.

[52] *Mendoza*, 548 F. App'x at 128–29 (cleaned up).

[53] *See, e.g.*, Doc. No. 81-1 at 155 (showing Navarro administrators' knowledge that Jones "manipulated" school officials into "pushing all of [Boles'] buttons" in a manner that could be seen as "ganging up on him").

[54] Doc. No. 79 at 55–56.

[55] Doc. No. 91 at 453 ("Dr. Hanes refused to listen to the recordings, or the arguments supporting my complaint.").

[56] *Matherne v. Ruba Mgmt.*, 624 F. App'x 835, 839 (5th Cir. 2015) (per curiam) (cleaned up).

If Boles alleges supervisory harassment, he wouldn't need to prove Navarro's knowledge of the harassment, but Navarro could raise an affirmative defense by showing that (1) it "exercised reasonable care" to correct discrimination, and (2) Boles "unreasonably failed to take advantage of . . . corrective opportunities."[57]  So the question is whether Boles brings a claim of supervisory harassment.

Boles's briefing on this point is less than illuminating.  Although he claims that "Jones was constantly attempting to act as [his] supervisor" and discusses strict-liability "supervisor harassment,"[58] he does not argue that Jones qualifies as his supervisor.  Further, Boles asserts that Navarro cannot employ the corrective-opportunity affirmative defense because Navarro "was specifically knowledgeable" of Jones's harassment.[59]  Accordingly, the Court concludes that Boles is not asserting a claim for supervisory harassment but instead argues Navarro knew of Jones's harassment that created a hostile work environment for Boles.

The Court **DENIES** Navarro's motion for summary judgment as to Boles's hostile-work-environment claim.

### d.  Breach-of-Contract Claim

In his response to Navarro's motion for summary judgment, Boles "non-suits and/or withdraws his claim for breach of contract."[60]  As such, the Court **DISMISSES WITHOUT PREJUDICE** Boles's breach-of-contract claim against Navarro.

---

[57] *Id.* (cleaned up).

[58] Doc. No. 90 at 10, 54.

[59] *Id.* at 57.

[60] *Id.* at 8 n.1.

## IV.  Conclusion

The Court **GRANTS IN PART AND DENIES IN PART** Navarro's motion for summary judgment.  Because the Court has not relied on any of the evidence discussed in Navarro's motion to strike—except where noted—the Court **DISMISSES IN PART AS MOOT** and otherwise **DENIES IN PART** Navarro's motion to strike.[61]  Because Boles nonsuits his breach-of-contract claims, the Court **DISMISSES WITHOUT PRJEUDICE** Boles's breach-of-contract claim against Navarro.

**IT IS SO ORDERED** this 9th day of December, 2022.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[61] The Court also finds the motion to strike **MOOT** to the extent that the Court has already allowed Boles to supplement the record with the student-complaint recordings.  Doc. No. 112.